398 F.2d 777
 BARNWELL GARMENT COMPANY, Inc., a subsidiary of Colonial Corporation of America, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
International Ladies' Garment Workers' Union, AFL-CIO, Intervenor.
 No. 17764.
 United States Court of Appeals Sixth Circuit.
 July 30, 1968.
 
 Anthony J. Leggio, Atlanta, Ga. (Mitchell, Clarke, Pate & Anderson, Atlanta, Ga., of counsel), for petitioner.
 Frank H. Itkin, N.L.R.B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Frank H. Itkin, Julius Rosenbaum, Attys., N.L.R.B., Washington, D. C., for respondent.
 Before WEICK, Chief Judge, and PECK and COMBS, Circuit Judges.
 COMBS, Circuit Judge.
 
 
 1
 This case is before the Court on petition of the Barnwell Garment Company, Inc., seeking review of an order of the National Labor Relations Board. The Board cross-petitions for enforcement. The Board found that Barnwell violated Sections 8(a) (3) and 8(a) (1) of the Act by laying off approximately one-half of the employees at its Erin, Tennessee plant and, through one of its supervisors, interrogating an employee about his union membership, assuring him of continued employment if he left the union, and then laying him off when he refused to do so.
 
 
 2
 Barnwell's Erin plant was opened in 1962 after the company had received a loan and certain tax benefits from the Houston County Court (the county in which Erin is located). After operating for little more than a year, Barnwell's management determined that it would be advantageous to expand the plant facilities, and in late 1963 sought an expansion loan from the Houston County Court. This request was refused. About this same time Barnwell decided to sell the Erin plant. Barnwell's vice president, Leonard Friedman, speaking to an assembly of Erin employees on January 31, 1964, told of the rejection of the loan request, the plant's failure to return a profit, and the decision to offer the plant for sale. On February 28, 1964, faced with mounting inventories, the plant was cut back to a three-day work week.
 
 
 3
 During the time some of the foregoing events were developing, a unionization campaign was in progress at the Erin plant. Three days prior to Friedman's speech, the initial union meeting was held in an employee's home. There was no evidence that Friedman was aware of this when he spoke to the employees. As early as the day after his speech, however, the union drive was known to Barnwell's management, and by late February a substantial majority of the employees had signed union cards. An election was held on March 30, 1964, which the union won by a wide margin.
 
 
 4
 The union was informed that Barnwell was dissatisfied with the three-day week arrangement and planned to lay off some employees so as to provide those remaining with a full work week. The union declined to participate in selecting the employees to be laid off and thereafter, on April 1, 1964, Barnwell laid off approximately one-half of its work force. There was no claim that those who were laid off were selected in a discriminatory manner, but the lay-off itself was made the basis of an unfair labor practice charge. This charge was filed on September 28, 1964. The six months' statute of limitations in Section 10(b) would require that only those events occurring after March 28, 1964, could be sustained as unfair labor practices.
 
 
 5
 After a hearing on this charge, the trial examiner found that the lay-off was motivated by economic considerations and did not amount to an unfair labor practice. On review, the Board reversed the trial examiner and found that the lay-off amounted to an unfair labor practice in violation of Sections 8(a) (3) and 8(a) (1).
 
 
 6
 The Board's conclusions are binding upon this Court if supported by substantial evidence. 29 U.S.C. § 160(e); Universal Camera Corp. v. N.L.R.B., 340 U. S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); N.L.R.B. v. Tru-Line Metal Products Co., 324 F.2d 614 (6th Cir. 1963), cert. denied, 377 U.S. 906, 84 S. Ct. 1167, 12 L.Ed.2d 177 (1964). However, it is our opinion that the trial examiner's findings were correct and that the record does not contain substantial evidence to support the Board's findings.
 
 
 7
 Clearly, a company may curtail its work force for economic reasons, notwithstanding the plant employees' union representation or organizing efforts. N.L.R.B. v. Murray Ohio Mfg. Co., 326 F.2d 509 (6th Cir. 1964). Here, the company failed to obtain an expected expansion loan and about the same time decided to sell the plant. Both of these events occurred before any union activities were commenced. Indeed, Barnwell's vice president informed the Erin employees of the decision to sell before the company knew of any overt union activity.
 
 
 8
 The Board apparently placed considerable weight on Barnwell's anti-union actions, most of which occurred outside the statutory period. It is true that activities outside the statutory period may be used as evidence to shed light on events which occur within that period. Local Lodge No. 1424, Int'l Ass'n of Machinists, AFL-CIO v. N.L.R.B., 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960). But, the fact that an employer harbors an anti-union bias cannot be used to contaminate its every subsequent act. There is no evidence of substance to link the anti-union bias of Barnwell to the lay-off of employees at its Erin plant.
 
 
 9
 Another charge of a violation of Section 8(a) (1) grew out of an incident which occurred when Marvin Rushing, an employee who had been laid off, was called back to fill in for an injured employee. Rushing asked his foreman, Charles Crews, if the work would be permanent and Crews replied in the affirmative. Crews then asked if he had abandoned his union membership and Rushing answered that he would "stick with the Union." Crews expressed his regrets, and Rushing was laid off again the following day. This was clearly a violation of the Act, and the Board properly so found. N.L.R.B. v. Bin-Dicator Company, 356 F.2d 210 (6th Cir. 1966); N.L.R.B. v. Camco, Incorporated, 340 F. 2d 803 (5th Cir. 1965). Barnwell asserts that it had no notice of this charge and thus was prejudiced in defending against it. We find no merit in this contention.
 
 
 10
 The findings of the Board that Barnwell violated Section 8(a) (1) by the interrogation and discharge of Rushing are supported by the record and will be enforced. The findings of a violation of Sections 8(a) (3) and 8(a) (1) in the April 1 lay-off are not supported by substantial evidence and enforcement of the order entered thereon is denied.