**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INLAND MOTORS, Respondent.**

**No. 25762.**

United States Court of Appeals, Ninth Circuit.

Feb. 25, 1971.

Eugene A. Wright, Circuit Judge, dissented and filed opinion.

Joseph C. Thackery (argued), Atty., N.L.R.B., Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C., Abraham Siegel, Director, N.L.R.B., Los Angeles, Cal., for petitioner.

H. Burdette Fredericks (argued), Herbert M. Ansell, Los Angeles, Cal., for respondent.

Before ELY, HUFSTEDLER and WRIGHT, Circuit Judges.

PER CURIAM:

The petition for enforcement is granted.

The evidence permitted the drawing of conflicting inferences. Those upon which the Board based its order are not unreasonable; hence, we cannot overturn the factual conclusions upon which the Board's order was based. *Cf.* N. L. R. B. v. Greentree Electronics Corp., 432 F.2d 1011 (9th Cir. 1970). *See also* Santa Fe Drilling Company v. N. L. R. B., 416 F.2d 725 (9th Cir. 1969).[1]

---

1. Judge Wright's dissenting opinion very carefully emphasizes those facts which might have justified a different conclusion on the part of the Board. It also underscores the fact that the Board's resolution of the controversy rested upon its interpretation and application of sharply conflicting inferences. As in most matters of this type, the record under consideration discloses circumstances which are somewhat unique; consequently, the majority concludes that no useful purpose would be served by expanding an opinion which can have little precedential value.

EUGENE A. WRIGHT, Circuit Judge (dissenting):

I respectfully dissent. The opinion of the majority enforces a Board order requiring the respondent to cease and desist from unfair labor practices, and affirmatively requires reinstatement, with back pay, of an admittedly incompetent, insolent and insubordinate employee.

The Board's finding regarding the employee (Michael) was directly contrary to that of the Trial Examiner who specifically ruled that "Michael was discharged by Service Manager Hall because of his low production and because Michael was insolent and insubordinate and for no other reason."

The discharged employee, Michael, was employed by Inland Motors for a short time only, less than two months. The Board has virtually conceded in its brief and on oral argument that good cause for discharge existed but asserts that union animus of the employer must have come into play.

What was Michael's union activity? This is not a case where there was an active organizational campaign at Inland Motors.

The union involved was the Automobile Salesmen's Union, Local #2327, International Association of Machinists. Michael was employed as a salesman for Inland Motors at Redlands, San Bernardino County, California. The union began an organizing campaign in Los Angeles and Orange Counties, in January 1968, ultimately spreading to the rest of southern California, including San Bernardino.

After Michael had been employed for a month by Inland, he attended a union meeting in Long Beach and returned with union literature and membership applications. He arranged to have a union representative come to Redlands about a week later. A meeting was scheduled, Michael invited men at other agencies and invited one salesman at Inland to attend. None of his invitees did attend. From the record before us, this is the extent of the union activity in Redlands and at Inland in particular.

In the management of Inland, the record conclusively shows that only Sales Manager Baldwin was aware of Michael's union interest and had told him that the union had been tried in Long Beach, was no good and that "they were a bunch of thieves." From this, the Trial Examiner and Board properly concluded that Baldwin had the requisite union animus to support a separate charge of unfair labor practice, not involved in this appeal.

However, Michael was not discharged by Baldwin after revealing his interest in the union. In fact, a week or more passed before the incidents leading to the discharge. Michael had previously been late for work at least three times. On the day he was discharged, he missed a sales meeting at 2:00 P.M. and was again late for his shift which was to begin at 2:30 P.M. His supervisor, Assistant Sales Manager Hall, asked him for an explanation because the sales force had to account for its time.

Michael responded that it was "none of your business; I don't have to call you or anybody else." He used language so vile that Hall refused to repeat it at the hearing and was so loud and belligerent that Hall feared that other salesmen and potential customers would hear and be offended.

Because Hall also was a recent employee of Inland he was reluctant to discharge Michael without first clearing with Baldwin. He did so and was told he need not submit to such abusive lan-

Suffice it to say that there are many indications that Michael was truly discharged because of his engagement in protected union activity and that the reasons ultimately given by the employer for his discharge, which, incidentally, were not given at the time of the discharge, were pretextual. For an adequate rebuttal to Judge Wright's opinion, *see* the opinion of the Board, reported at 175 NLRB No. 139.

guage and insolence. When Hall delivered Michael's final paycheck, he discharged him and, for an explanation, said "not enough sales."

The Board thought it significant that insubordination was not given as the reason and surmised that union animus must have had something to do with it. But the fact was, as testified to by Hall and found by the Examiner, that Hall felt badly, was embarrassed over the profanity and insolence, was conscious of the feelings of people who worked with him and of the customers whom he served, and hoped that Michael would find other work. As Hall testified, "I wished him luck and I sincerely meant it."

At the time of the firing, Hall did not know that the union was attempting to organize salesmen anywhere in southern California. He first learned of it a month or two later when a representative of the Board called on him. Hall testified that he had no objection to unions, and that the discharge was due solely to Michael's attitude toward prospective customers, buyers, Hall, Baldwin and everyone in the company. The Trial Examiner believed this testimony and found that Michael was discharged for poor production and bad attitude and "for no other reason."

The test which must be applied by this court in a proceeding to enforce a Board order does not differ when the Board disagrees with the conclusions of the Trial Examiner. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S. Ct. 456, 95 L.Ed. 456 (1951).

In *Universal Camera*, it was said that:

"Courts must now assume more responsibility for the reasonableness and fairness of Labor Board decisions than some courts have shown in the past. Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function. Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds." 340 U.S. at 490, 71 S.Ct. at 466.

It was also noted in that case,

"We intend * * * to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony." 340 U.S. at 496, 71 S.Ct. at 469.

My approach to this case follows that specified in Santa Fe Drilling v. N. L. R. B., 416 F.2d 725 (9th Cir. 1969). "The determination which the Board must make is one of fact—what was the *actual motive* of the discharge?" *Id.* at 729. Conceding the difficulty of such a test, *Santa Fe Drilling* goes on to point out that this factual determination "depends principally upon inferences drawn from the entire web of circumstances presented by the evidence." *Id.*

Drawing then upon Santa Fe Drilling, I note first that both the Trial Examiner and the Board were in agreement that the five employees involved there had in fact been fired because of their union activity. I note also that the atmosphere in that case was substantially different from that here. A prolonged certification struggle, including an election, had preceded the discharge of the employees in question. As to the first four employees, this court found that there was evidence in the record that the supervisory personnel who had discharged them were well aware of their union activity and that at least one had previously been threatened with discharge for union activity.

As to the fifth employee, however, this court refused to enforce the Board's order because there was no evidence in the record to support the finding that the supervisor knew of his union activity. Further, the Trial Examiner had made no such finding.

The situation here more nearly parallels that of the fifth employee in *Santa Fe Drilling*. As to that employee (Barefield), the record showed that one of the supervisors (Blair) knew of his union activity but that another (Roady) had actually fired him for conduct which, as here, was concededly good cause for discharge. There was no evidence in the record that Roady was aware of Barefield's union connections and neither the Trial Examiner nor the Board had drawn an inference of knowledge on Roady's part.

In that case as here, we were invited by the Board to draw such an inference[1] but declined to do so. In this controversy I think it quite clear that the Trial Examiner not only failed to draw such an inference but in fact fully credited Hall's testimony as to his complete lack of knowledge of union activity on Michael's part. It is also significant that the Board itself, while disagreeing with the Trial Examiner, did not infer, as suggested in oral argument, that Hall had been made aware of Michael's interest in the union.

Rather than find that Hall knew of Michael's union activity, the Board disagreed with the Trial Examiner's conclusion that Baldwin's role in Michael's discharge was "entirely passive." In *Santa Fe Drilling*, we said that "unless it is found that some person who participated in or contributed to the discharge knew or suspected that the employee had engaged in protected union activity, an ultimate finding of discriminatory discharge cannot be upheld." *Id.* at 732. I think the Trial Examiner's conclusion that Baldwin's role was "entirely passive" is supported by the record and requires the conclusion that he neither "participated in or contributed to" Michael's discharge.

One thing is quite clear from *Santa Fe Drilling*. Since the *actual motive* for discharge is the crucial inquiry, a Board finding of discriminatory discharge cannot be affirmed if the knowledge of union activity resides in one supervisory employee and the actual discharge is accomplished by another. It is beyond dispute, therefore, that the Board could *not* have found that Michael's discharge was the result of protected union activities if Hall had summarily discharged him following his outburst on the afternoon in question. *See, e. g.,* Salinas Valley Broadcasting Co. v. N. L. R. B., 9 Cir., 334 F.2d 604, 613 (1964). I do not believe that Hall's action in checking first with Baldwin converts a permissible discharge for cause to one which is impermissible solely because Baldwin was the acknowledged repository of union animus.

The Board decision goes to some length to find that one of the stated reasons for Michael's discharge, poor production, was pretextual. That position was weakened somewhat in its brief and essentially abandoned during oral argument.

It is clear to me that Michael was discharged for a combination of poor production plus an insubordinate attitude which made his marginal[2] services unacceptable to Inland Motors. We need not decide whether his production record standing alone was sufficient to constitute good cause for discharge.

In its decision and its brief before this court, the Board suggests that Michael's insolent attitude had nothing whatever to do with his discharge and

---

1. At oral argument, petitioner suggested that we might infer that Hall in fact knew of Michael's union activity because Hall had met with Baldwin and the president of Inland Motors, Guggisberg, on the morning of Michael's discharge. While such an inference might be drawn by the Trial Examiner or the Board, we decline to do so where they have not.

2. The testimony of the supervisory personnel as well as other salesmen at Inland Motors was unanimous in evaluating Michael's production as "poor." The most Michael could say for his own record was that it was "fair."

that it was raised late in the proceedings as an afterthought because Inland Motors realized that a discharge based solely on poor production would not stand up under close examination.

I cannot accept this significant change in the Board's position. When Inland Motors attempted to amend its answer to specifically plead the "belligerent and insubordinate attitude of Michael," the Board responded by noting that Inland had generally denied the charges against it and that "such a general denial encompasses both grounds set forth by Respondent in its motion to file an amendment to its original answer. Not only does Respondent's general denial encompass both grounds set forth in the amended answer but both grounds were actually litigated at the hearing."

I think it completely inconsistent for the Board to take the position that a general denial is sufficient to allow Inland to litigate the question but that failure to plead it specifically precludes the finder of fact from relying upon it as grounds for discharge.

In short, the Board here has taken the actions of Hall in firing Michael combined with the knowledge and union animus of Baldwin and attributed both to Inland Motors in such a way as to find an unfair labor practice. I conclude that such an approach not only violated the "actual motive" test to be applied in these cases but is directly contra to our decision in *Santa Fe Drilling*.

There is absolutely no evidence that Hall had any knowledge of Michael's union activity and neither the Board nor the Trial Examiner drew any such inference. The fact that Baldwin was consulted first by Hall does not mean that he "participated in or contributed to" Michael's discharge and the substantial evidence in the record supports only the inference that Baldwin's role was passive as the Trial Examiner had concluded. I would deny the petition for enforcement, in so far as it would require reinstatement of Michael.