762 F.2d 1008
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
WALTER KAYLOR, PLAINTIFF-APPELLANT,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, DEFENDANT-APPELLEE.
 NO. 84-1183
 United States Court of Appeals, Sixth Circuit.
 3/26/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 BEFORE: MARTIN and KRUPANSKY, Circuit Judges; and BERTELSMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Walter Kaylor (Kaylor) appealed the summary judgment of the district court which affirmed the Secretary's denial of Kaylor's application for Social Security disability benefits. The district court decision was premised on the recommendation and report of a magistrate rendered on the following facts.
 
 
 2
 Kaylor was born in 1923 and completed the 12th grade. Following a stint in the military, he began working in the automobile industry. For the 15 years prior to December 23, 1980 (Kaylor's last day of work), he was employed as a metal finisher at Chrysler Corporation. This job required the use of tools and heavy equipment to sand out bumps, scratches, and holes at buckled places on the doors and other surfaces of the vehicles. These tasks were performed while bending over the automobiles, and, during a period of 15 years, initiated a shoulder injury from which symptoms of pain and immobility first surfaced in 1980.
 
 
 3
 After initial cortisone steriod treatments failed to alleviate his discomfort, Kaylor underwent two surgeries. In May of 1981, an acrominoplasty, i.e. a surgical reconstruction of the tip of the shoulder joints and musculature, was performed on Kaylor by Dr. Edward S. Jeffries, an orthopedic surgeon, at Detroit Macomb Hospital. While plaintiff tolerated the surgery well, the procedure was ineffectual in reestablishing muscle control of the shoulder area and alleviating the pain. Immediately following surgery, Kaylor underwent an out-patient physical therapy program in an attempt to rehabilitate the immobilized shoulder.
 
 
 4
 In September of 1981, a second surgical entry was necessary to correct a ruptured bicep below the area of the original acrominoplasty. The repair of this ruptured bicep required the reattaching of the bicep muscles to the tendons above it by use of metal/alloy staple-fastener. Dr. Jeffries again performed this surgery successfully. However, he was not able to completely alleviate the pain, nor reestablish full mobility to claimant's shoulder. On discharge, Kaylor was again instructed to do rigorous 'Kagel' exercises on a periodic basis and advised to return for further treatment.
 
 
 5
 In a letter dated December 23, 1981, Kaylor was referred by Dr. Jeffries for therapy treatment to Dr. Hi Song, a specialist in physical medicine and rehabilitation. In this correspondence, Dr. Jeffries noted that Kaylor continued to experience pain in the right shoulder area, burning in nature, and was unable to use the shoulder effectively.
 
 
 6
 In a report dated March 16, 1982, Dr. Song related that Kaylor suffered from swelling and pain in his right shoulder, which remained constant in its severity since onset. In subsequent evaluations by Dr. Song in October, 1982, the physician noted that the passive range of motion of Kaylor's right shoulder was limited in abduction and external rotation due to pain. Complaints of pain and tenderness were recorded on the acromial area as well as diffused tenderness over the upper trapezius musculature. Dr. Song detailed a process of therapy under several disciplines, including ultrasound, medication, and acupuncture, all of which failed to provide the necessary relief. It was the opinion of Dr. Song that the shoulder problem was permanent and Kaylor's right upper extremity was totally disabled regarding functional activities such as lifting, pulling, and hammering. Dr. Song advised continuation or the TNS (transcutaneous nerve stimulator) treatment and range of motion exercises for rehabilitation purposes.
 
 
 7
 In August of 1982, Kaylor was referred to the Fisher Medical Center to be evaluated by Dr. G. Theodoulou, an orthopedic surgeon for the Social Security Office. In an independent examination on behalf of the Social Security Administration, Dr. Theodoulou recorded the following: (1) restriction of motion on the right shoulder and neck as well as cervical spine; (2) flexion and rotation of the right shoulder was noted as extremely decreased; and (3) the present condition was p ssibly produced by degenerative arthritic changes. However, Dr. Theodoulou did not provide an opinion as to the extent of disability resulting from the shoulder impairment.
 
 
 8
 At a hearing before an a.l.j. on November 4, 1982, the above medical evidence was introduced, as well as the testimony of the claimant and a vocational expert.
 
 
 9
 The 5'8", 200 pound claimant stated that he was right handed, literate, and had no specialized vocational training. Despite extensive medical attention, Kaylor averred that he continued to experience a constant throbbing, burning pain in his shoulder, back and neck. He testified that the pain is aggravated by humid weather or bumping it, or by any use of his arm, even picking up a cup of coffee.
 
 
 10
 Kaylor further reported that he can take care of most of his personal needs, helps with housework to the extent that he can perform tasks with his left hand, and has use of his right hand in terms of gripping and mobility. He also stated that he can walk unrestricted as long as he places his hand in his pocket to render his right arm immobile, that he gets stiff if he sits too long, and that he is unable to life a four pound weight with his right arm, but could probably lift 30-40 pounds with his left arm.
 
 
 11
 Vocational Counselor Lawrence Zatkin also testified at the hearing. Zatkin classified Kaylor's job as a metal finisher as 'semi-skilled' and requiring an exertional level of 'medium to heavy.' In response to the question of whether any light, sedentary jobs exist that Kaylor could perform if he had to primarily rely on his left arm, the vocational expert answered that such an individual might be able to perform inspection, sorting or packaging jobs. The expert further stated that about 6,000 such jobs exist in Southeast Michigan, and 8,500 to 9,000 in the entire state.
 
 
 12
 Based on the record before him, the a.l.j. concluded that while Kaylor would be unable to return to his former position as a metal finisher, the retained use of his right arm from the elbow down would allow him to perform light or sedentary work. The Appeals Council affirmed the a.l.j.'s decision and Kaylor perfected an appeal. The district court's affirmance of the denial of benefits is now challenged in this appeal.
 
 
 13
 The standard for judicial review of Title II claims is set forth in Sec. 205(g) of the Act, 42 U.S.C. Sec. 405(g), which provides that '[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . .' The term 'substantial evidence' is defined as such relevant evidence as a reasonable mind might accept as adequate to support a particular conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938); Beavers v. Secretary, HEW, 577 F.2d 383, 388 (6th Cir. 1978). Substantiality of evidence must take into account whatever in the record fairly detracts from its weight. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Stated differently, the reviewing court may not focus on a single piece of evidence, and disregard other pertinent evidence. Beavers, supra, 577 F.2d at 383; Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978)
 
 
 14
 It is settled law that the burden of proof rests upon the claimant to establish his entitlement to disability insurance benefits under the Social Security Act. Bloch v. Richardson, 438 F.2d 1181 (6th Cir. 1977) (per curiam); Ragan v. Finch, 435 F.2d 239 (6th Cir. 1970) (per curiam), cert. denied, 402 U.S. 986 (1971). A prima facie case is established if the claimant demonstrates a disability by reason of a medically determinable impairment, supported by clinical and laboratory findings, that the impairments at issue prevent claimant from performing his previous work. Hephner v. Mathew, supra, 574 F.2d at 361. The burden shifts to the Secretary to show the existence of evailable employment compatible with the claimant's limitations. The ultimate burden of persuasion that any given impairment or combination thereof renders the claimant unable to engage in any substantial employment, however, remains with the claimant. Vaughn v. Finch, 431 F.2d 997, 999 (6th Cir. 1979); Gray v. Finch, 427 F.2d 336, 338 (6th Cir. 1970) (per curiam).
 
 
 15
 In the case at bar, the claimant made out a prima facie case by showing that a medically determinable impairment, severe tendonitis of the right shoulder, existed and that this condition prevents claimant from performing his previous work as a metal finisher. However, even the claimant's own testimony supports the a.l.j.'s finding that he is capable of performing light work.
 
 
 16
 For example, Kaylor testified that he had no limitation in basic work requirements such as walking, sitting and standing. See, 20 C.F.R. Sec. 404.1521(b)(1)(1982). Claimant demonstrated at the hearing that he could lift his right arm to get his hand level with his chest. He also admitted that he had 'no problem' with mobility or gripping with his right hand. Kaylor acknowledged that he could life thirty to forty pounds with his left arm or ten pounds several times a day. Claimant further stated that he engages in a wide variety of activities including light housework, limited driving, walking, visiting neighbors, reading and watching television. In sum, claimant's testimony supports the a.l.j.'s decision that he has the residual functional capacity to perform light work wherein he could rest his right arm on a bench or table.
 
 
 17
 In addition, the reports submitted by Kaylor's treating physicians, Dr. Jeffries and Song, do not suggest that claimant's exertional limitations are more severe than the a.l.j. concluded. While Dr. Song opined that claimant's upper right extremity was totally and permanently disabled from functional activity such as lifting, pulling, and hammering, the physician did not express the opinion that Kaylor's shoulder impairment precluded any and all gainful employment. The same is true of Dr. Jeffries' medical records, and of the report furnished by the Secretary's consulting physician, Dr. Theodoulous.
 
 
 18
 Kaylor's most viable argument on appeal was that the pain resulting from his shoulder impairment renders him completely disabled. However, the a.l.j. concluded that 'his complaints with respect to his pain and the need to lie down during the course of the day appear to be somewhat exaggerated and were not bourne out by his physical appearance and demeanor at the hearing.'
 
 
 19
 It is well established that pain alone, when occasioned by a clinically-ascertainable impairment, can be totally disabling. Beavers, supra. However, the effect of a particular individual's ability to function despite the pain ultimately hinges upon the a.i.j.'s credibility assessment of that individual. Beavers. supra, 577 F.2d at 386. In the instant case, the claimant's testimony as to pain, even if fully credited, would not warrant a finding of disability. To the contrary, Kaylor stated that the pain does not preclude him from activities such as walking, sitting, driving or even grasping objects with his right hand. Thus, the a.l.j.'s determination that Kaylor could perform tasks such as those required for inspecting, sorting, or packaging jobs is supported by substantive evidence, and the lower court's grant of summary judgment for the Secretary was proper.
 
 
 20
 In view of the foregoing, the district court decision is AFFIRMED.
 
 
 
 *
 Hon. William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation