CARBONE BROS. & CO., Inc., et al.,
Plaintiffs,

v.

UNITED STATES of America,
Defendant,
Interstate Commerce Commission and
Erie-Lackawanna Railroad Company, Intervening Defendants.

United States District Court
S. D. New York.

Dec. 1, 1961.

See also 194 F.Supp. 79.

Bernstein, Weiss, Hammer & Parter, New York City, Norman A. Coplan, New York City, of counsel, for plaintiffs.

Robert W. Ginnane, General Counsel, Arthur J. Cerra, Washington, D. C., Asst. General Counsel, of counsel, for Interstate Commerce Commission.

Richard E. Costello, New York City, for Erie-Lackawanna R. Co.

Before MOORE, Circuit Judge, and RYAN and DAWSON, District Judges.

DAWSON, District Judge.

In this action, which is brought under 28 U.S.C. §§ 1336, 1398, 2321–2325 and 49 U.S.C. § 17(9), the plaintiffs, who are eleven corporations and partnerships dealing in fruits and vegetables at New

York, N. Y., seek to set aside and annul an order of the Interstate Commerce Commission which was issued in Docket No. 32350, Carbone Brothers & Company Inc., et al. v. Erie Railroad Company, 306 I.C.C. 360. The challenged order of the Commission found that charges by the Erie Railroad for the switching and reicing of a number of carloads of melons held in Erie's trainyard at Croxton, N. J., for delivery in New York City and Jersey City, N. J., were the applicable charges under the published tariffs and were not shown to have been unjust, unreasonable, or otherwise unlawful under the Interstate Commerce Act. Prior to commencing this action plaintiffs sought to attack the Commission's order in a proceeding before a one-judge district court, but their complaint was dismissed for lack of jurisdiction on the ground that plaintiffs were seeking relief against future violations as well as reparations for past conduct and that only a district court of three judges was competent to give this prospective relief. 28 U.S.C. § 2325.

The essential facts of the case are not in dispute. Shipments of melons, originating in Arizona and California, were consigned to the plaintiffs at New York City and were moved by the Erie from Hammond, Indiana, to its Croxton yards on the outskirts of Jersey City, N. J. Almost all of this traffic was handled in two daily trains, the faster of which was scheduled to arrive at Croxton at 9:00 p. m. and the other at 3:45 p. m. the following day. Upon arrival in Croxton the cars remained in the yard for varying periods of time before being moved for unloading to rail terminals in Jersey City or the New York pier stations, principally the Duane Street Station on Manhattan Island. Delivery of the cars from Croxton to the Duane Street piers was accomplished by floating them over the Hudson River on barges.

Cars of perishables moving through Croxton, N. J., had to be ordered for delivery to the point of final destination by the consignee and, in the case of shipments consigned to the Duane Street Station, the railroad was required to furnish 48 hours of free time after the car reached Croxton for the placement of such orders. If the melons were to be delivered for that night's New York market, which began at 9:45 p. m., the Erie required that orders for delivery be given not later than 2:00 p. m. of that day. From 80 to 90 percent of the melon cars received at Croxton were ordered for delivery at the earliest opportunity and the remainder were held for longer periods of time.

All of the shipments involved in this proceeding moved under standard refrigeration service pursuant to Perishable Protective Tariff No. 17, Agent Jamison's I.C.C. No. 34, for which the railroad collected a charge of $159.60 per car over the regular line-haul charge. In addition to these charges, the Erie claimed and collected an icing charge of $6.91 per ton and a switching charge of $1.22 per car, under Section 4 of the tariff, for the reicing and switching of the plaintiffs' melon cars at Croxton. It is the validity of these latter charges, which were sustained by the I.C.C., that are challenged by the plaintiffs in this proceeding.

The correctness of the Commission's ruling turns primarily on whether they rightly interpreted the applicable provisions of the above-mentioned tariff. Section 2, rule 225, paragraph D of that tariff, on which plaintiffs rely, reads as follows:

"Bunkers Three-Fourths Full Upon Arrival:

"D—Cars placed on hold, inspection, or delivery tracks, at intermediate stop points, hold points, or at destination, with bunkers less than three-fourths full of ice, will be reiced to capacity and expense included in Standard Refrigeration Service charge. See paragraph G."

If this paragraph were controlling here, the Erie would have been required as part of its standard refrigeration service to reice cars held at Croxton whenever the bunkers were less than three-fourths

full, without making any additional charge.

In the Commission's opinion, however, the validity of the reicing charges imposed by Erie was not governed by paragraph D, but by paragraph G, which specifically applies to shipments in the New York area and which, along with related paragraph E(1), provides as follows:

"Cars held in Train Yards Serving Metropolitan Districts, New York, N. Y., and also Stations in New Jersey:

"G—Cars for delivery in New York, N. Y., Brooklyn, N. Y., Jersey City, N. J., * * * and held in train yard serving destination when arriving in destination train yard with bunkers less than three-fourths full of ice will be reiced to capacity and expense included in Standard Refrigeration Service charge. Carriers will examine bunkers or tanks daily and when additional ice is required they will be reiced to capacity.

"Charge for Ice at Intermediate Points and Destination:

"E(1)—Charge for ice supplied under the provisions of paragraphs A, B, C, and G will, except as provided in paragraph D, be as provided in Section 4 in addition to all other charges."

It is apparently not disputed that the Erie's Croxton yard is a "destination train yard" within the meaning of paragraph G, that the cars in question arrived in the yard with bunkers more than three-fourths full of ice, and that the ice for which the Erie exacted an additional charge was placed in the cars during the morning following their arrival.

The plaintiffs urge, however, that since most of the cars in question were ordered for "immediate delivery" the Commission was in error in finding that these cars were "held" in the train yard as provided in paragraph G. Plaintiffs contend that the word "held" imports a meaning that an order of the consignee must have delayed shipment.

We see no reason however to overturn the Commission's conclusion that the word "held" as used in paragraph G is not confined to situations where the consignees delay delivery, but that it also includes situations where, as here, the cars are physically at rest in the yards for a number of hours pending shipment to New York City. Nor can we say that the Commission was in error in making reference to another tariff to support its conclusion that the word "held" is simply descriptive of terminal conditions existing around New York City and is not limited in meaning to delays occasioned by the consignees. See Secretary of Agriculture v. United States, 347 U.S. 645, 648, 74 S.Ct. 826, 98 L.Ed. 1015 (1954); Unloading Charges on Fruits and Vegetables at New York and Philadelphia, 298 I.C.C. 637, 642, 644 (1956).

As a second ground for setting aside the Commission's order, plaintiffs urge that even if the cars are considered to have been "held" in the Croxton yards within the meaning of paragraph G, the reicing did not take place following a daily examination. The basis for this argument apparently rests on the fact that some of the cars in question did not arrive in the yard until after midnight, whereas the testimony disclosed that the usual inspection period was between 4:00 p. m. and midnight. However, it appears that a further inspection was made at 8:00 a. m., prior to the reicing of the cars, and on the basis of this inspection some of the cars were reiced while others were not. Accordingly, we cannot say that the Commission was wrong in finding that the requirements of paragraph G had been met.

Finally, plaintiffs suggest that the additional ice was not required and that, therefore, they should not have been charged for the reicing. Plaintiffs were unable to say, however, that any particular car had been reiced unnecessarily, and in view of the substantial time lapse between the reicing and the unloading of the cars at Duane Street we cannot say

that the Commission unreasonably found the reicing to have been necessary.

We have considered the other objections urged by the plaintiffs and find them to be without merit. Reviewing the record as a whole, the decision of the Commission is supported by substantial evidence and must be affirmed. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); United States v. Interstate Commerce Comm., 91 U.S.App.D.C. 178, 198 F.2d 958, 963–964, cert. denied, 344 U.S. 893, 73 S.Ct. 212, 97 L.Ed. 691 (1952).

MOORE, Circuit Judge, and RYAN, District Judge, concurring.