CHARLES P. B. PINSON, INC.,
Appellant,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee.

No. 17441.

United States Court of Appeals District of Columbia Circuit.

Argued May 8, 1963.

Decided June 13, 1963.

Petition for Rehearing En Banc Denied Sept. 18, 1963.

Mr. John A. Hanley, St. Petersburg, Fla., for appellant.

Mrs. Ruth V. Reel, Counsel, F. C. C., with whom Messrs. Max D. Paglin, Gen. Counsel, Daniel R. Ohlbaum, Associate Gen. Counsel, and Richard M. Zwolinski, Counsel, F. C. C., were on the brief, for appellee.

Before PRETTYMAN, Senior Circuit Judge, and WILBUR K. MILLER and WRIGHT, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge.

Charles P. B. Pinson, Inc., wholly owned by Charles P. B. Pinson, appeals [1] from an order [2] of the Federal Communications Commission denying renewal of several common carrier radio station licenses. We affirm the order of the Commission.

Pinson is engaged in providing a very specialized radio communications service for persons such as doctors or repairmen who must operate away from their places of business and need a portable means of receiving messages. His basic operation consists of a telephone answering service and a master radio transmitter and receiver. With this equipment he provides two types of service. In so-called "one-way" service (also known as "pocket paging") the subscriber rents a small pocketsize receiver. At regular intervals the master station transmits a notice which tells the subscriber if any messages were received for him. If a message is indicated, the subscriber then telephones in to receive it. In so-called "two-way" service, the subscriber rents a portable receiver and transmitter. In this service the subscriber communicates with the master station by radio and receives his messages directly.

Pinson was licensed to operate three such stations in the Tampa—St. Petersburg area: KIG289—a two-way operation in St. Petersburg, KIG843—a one-way operation in St. Petersburg, and KIB386—a two-way operation in Tampa. Pinson's father-in-law, James C. Fields, was licensed to operate KIK578—a one-way operation in Tampa. This case arises out of an alleged improper transfer of control of Fields' station KIK578 to Pinson.

To understand the basis for the Commission action, it is necessary to review the manner in which the one-way licenses were originally obtained. In 1955 Pinson filed an application for a one-way station in St. Petersburg at 35.58 megacycles, and a one-way station in Tampa at 43.58

---

1. Pursuant to 48 Stat. 926, as amended, 47 U.S.C. § 402.

2. F.C.C. 62–823 (1962).

megacycles. When the Commission informally advised Pinson that both applications could not be granted to the same person without an evidentiary hearing,[3] Pinson dismissed the Tampa application and was granted a permit for the St. Petersburg station, designated KIG843.

In January, 1957, Fields, Pinson's 70-year-old father-in-law, filed an application for a new one-way station in Tampa at 43.58 megacycles, the frequency for which Pinson had previously applied. The application contained the usual recitals that the station would be under the control[4] of Fields. This station was licensed March 4, 1958, as KIK578.

Shortly thereafter, in the course of an investigation of television interference, it came to the attention of the Commission that Fields' Tampa station, KIK578, and Pinson's Tampa station, KIB386, had a common control point and that Pinson seemed to be operating both. The Commission then commenced an informal investigation to determine if Pinson had assumed control of Fields' station in violation of Section 310(b)[5] of the Federal Communications Act. While this investigation was still under way, Pinson's licenses on Stations KIG289, KIG843 and KIB386, and Fields' license on KIK578, expired and both Pinson and Fields filed applications for renewal. In view of the facts disclosed in the prior investigation, the Commission designated the applications for renewal for hearing, primarily on the character qualifications of the applicants. The Commission concluded that both Pinson and Fields were disqualified from holding licenses because of false statements made to the Commission in the original application for Station KIK578 and in the later investigation of the § 310(b) violation. Only Pinson has appealed, alleging four points of error.

## I.

Section 308(b)[6] of the Act requires the applicant for renewal to submit proof of good character. In weighing Pinson's proof of good character, the Commission considered the deliberate misrepresentations made to it by Pinson which concealed the § 310(b) violation. Pinson contends that this consideration is "foreign to the question of character qualifications." Appellant's contention is frivolous on its face.

## II.

Appellant further complains that the Commission improperly placed the burden of proof upon him to show that he was qualified to hold a license. He contends that these proceedings, though termed renewal, resulted in the revocation of his licenses and that in revocation proceedings the burden of proof is upon the Commission to show disqualification. The statute, however, shows beyond doubt that the Commission action was correct.

As we have said, these licenses had expired, or were expiring, and this was a proceeding seeking their renewal. Section 309(b) of the Act,[7] as it was then in effect, stated: " * * * [T]he burden of proceeding with the introduction of evidence upon any issue specified by the Commission, as well as the burden of

---

3. Frequencies 35.58 and 43.58 megacycles were the only frequencies available for this type of operation in the Tampa—St. Petersburg area. It is against Commission policy to grant a monopoly of coverage to one person without a showing that all his operations could not be conducted on one frequency.

4. Section 310(b) of the Federal Communications Act, 48 Stat. 1086, as amended, 47 U.S.C. § 310(b), requires that the grantee retain control of the station.

5. 48 Stat. 1086, as amended, 47 U.S.C. § 310(b).

6. 48 Stat. 1085, as amended, 47 U.S.C. § 308(b).

7. 66 Stat. 715, 47 U.S.C. § 309(b) (1958 Ed.). The statute was subsequently amended. 74 Stat. 889, 47 U.S.C. § 309(e) (Supp. III, 1961). Compare 48 Stat. 1086, as amended, 47 U.S.C. § 312(d).

proof upon all such issues, shall be upon the applicant [for renewal]." [8]

## III.

 Appellant's third objection concerns the testimony of the Commission attorney, Gladstone, who conducted the field investigation which resulted in the renewal hearing. Prior to the hearing appellant had filed complaints with the Commission alleging very serious misconduct on the part of Gladstone. These complaints had been investigated and rejected by the Commission. At the hearing the sequestration rule was imposed on witnesses, but Mr. Gladstone entered an appearance as counsel of record for the Commission and was permitted to remain in the hearing room, in spite of the fact that he would be the principal Government witness. The reason given for his designation as counsel was his familiarity with the case. Other Commission counsel, however, actually presented the Common Carrier Bureau's case.

Absent unusual circumstances, such practice is disapproved.[9] It would be unfair to private parties appearing before administrative agencies to permit the agency to circumvent the rule on witnesses by simply designating a witness counsel of record. However, we cannot find that appellant here was prejudiced. Mr. Gladstone was the first witness to testify. Thus his testimony on this occasion could not have been colored by testimony of other witnesses. He later testified in rebuttal, but he added nothing to what he had said previously. And he was extensively cross-examined on possible discrepancies between his original testimony and testimony in rebuttal.

 Appellant further argues that Mr. Gladstone's testimony should have been totally disregarded because it "is hardly believable [that] any human being" would not have been prejudiced beyond credibility by the prior accusations made against him by appellant. But one cannot disqualify the chief opposition witness by attacking him and then claiming prejudice. The credibility of the witness in these circumstances was for the trier of fact.[10]

## IV.

 Finally, appellant challenges the sufficiency of the evidence to support the Commission's conclusion that the statements made by Pinson were false. We have studied the record made before the Commission and, without reciting all the details, we conclude that the findings are supported by substantial evidence, viewing the record as a whole.[11]

The Commission's "findings here are supported by substantial evidence, * * * its explication is not inadequate, irrational or arbitrary, * * * and it did not exceed its powers or venture into an area barred by the statute." [12] Consequently, the order of the Commission is

Affirmed.

---

8. Before the statute made the allocation of burden of proof definite, this court had repeatedly held that the applicant for renewal had that burden even where the reason for denial was alleged misconduct of the applicant. See, e. g., Beebe v. Federal Radio Commission, 61 App.D.C. 273, 61 F.2d 914 (1932); Brahy v. Federal Radio Commission, 61 App.D.C. 204, 59 F.2d 879 (1932); Riker v. Federal Radio Commission, 60 App.D.C. 373, 55 F.2d 535 (1931).

9. See cases collected at 53 Am.Jur., Trial §§ 31–32. Cf. Canons of Professional Ethics of the American Bar Association, Number 19.

10. Appellant also complains that certain documentary evidence was seized by Mr. Gladstone and introduced into evidence in violation of his constitutional rights. The testimony cited by appellant shows no more than that Mr. Gladstone requested certain information which was supplied voluntarily by Pinson's employee. We agree with the Commission that this did not constitute improper action. See also 48 Stat. 1082, as amended, 47 U.S.C. § 303(n).

11. 5 U.S.C. § 1009(e); Universal Camera Corp. v. Labor Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

12. Labor Board v. Erie Resistor Corp., 373 U.S. 221, 236, 83 S.Ct. 1139, 10 L. Ed.2d 308 (1963).