**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ROBERT MEYER HOTEL COMPANY, Inc., d/b/a Robert Meyer Hotel, Respondent.**

No. 24055.

United States Court of Appeals Fifth Circuit.

Dec. 28, 1967.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Stanley Lubin, Atty., NLRB, Washington, D. C., for petitioner.

O. R. T. Bowden, Jacksonville, Fla., for respondent.

Before TUTTLE and WISDOM, Circuit Judges, and HEEBE, District Judge.

TUTTLE, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order against respondent issued on August 17, 1965. The Board's decision and order are reported at 154 N.L.R.B. 38.

The Board, accepting the trial examiner's findings and conclusions, found that respondent violated Section 8(a) (1) of the Act by coercively interrogating employees concerning union activities of themselves and fellow employees, by threatening reprisals against employees for union adherence, by creating the impression that union activities were under surveillance, by granting a wage increase for the purpose of discouraging union activity, and by instructing employees not to sign union cards.

The Board also found, accepting the findings and conclusions of the trial examiner, that respondent violated Sections 8(a) (3) and (1), by discriminatorily discharging three maids. Moreover, it also found, overruling the findings and conclusions of the trial examiner, that respondent violated Section 8(a) (3) and (1), by discriminatorily discharging nine bus girls, two kitchen helpers and one waiter.

This is a case that was decided almost completely by the resolution by the trial examiner and/or the Board of conflicts in sharply conflicting testimony. If the testimony of the employer Hotel company had been accepted throughout the Board could have found neither a Section 8(a) (1) nor a Section 8(a) (3) violation, because the employer's witnesses simply denied the occurrences upon which the general counsel's entire case was built, other than the fact that

in late August, 1964, the union began an organizational campaign among respondent Negro employees, including maids, bus girls and kitchen helpers.

A careful reading of the joint appendix makes it clear that some of the credibility choices made by the trial examiner leave an objective reader of the cold record with some degree of skepticism. Nevertheless, it is just not within the competence of this court to weigh the testimony, given on the one hand by the former manager, who by the time of testifying was no longer employed by the respondent and was thus claimed to be impartial, and on the other hand by employee witnesses, some of whom testified at a time when there was no opportunity for their evidence to be challenged by the employer's witnesses, and who swore to occurrences that were completely denied by respondent's testimony.

■ The trial examiner credited the general counsel's witnesses with respect to the coercive questioning by the representatives of the respondent, and, by so doing, provided the basis for the Board's determining that there had been a violation of Section 8(a) (1) of the Act. On the basis of the crediting of the testimony believed by the trial examiner and the Board, we conclude that there was substantial evidence on the record as a whole to require the affirmance of this determination.

■ The same credited testimony led the trial examiner and the Board to find the requisite knowledge on the part of the respondent that the organization effort was under way and that the three maids had signed union cards prior to their being discharged in late September. Here, again, although the credibility choice was a close one, we cannot say that the Board's acceptance of the trial examiner's findings that these three maids and other witnesses spoke the truth of the matter is not supported on the record taken as a whole.

With respect to the discharge of the nine bus girls and the two kitchen helpers and a room-service waiter, matters stand somewhat differently. The examiner credited the testimony of respondent that the nine bus girls in the hotel dining room were not satisfactory because they were physically unable to handle the work which had theretofore been done by boys, and which thereafter was carried on by boys. It appears that after these nine girls were discharged, no others were hired to take their place. Also, the respondent's testimony satisfied the trial examiner that the change effected a saving of nearly $100 a week, in spite of an increase in pay to the bus boys hired thereafter. Moreover, the trial examiner found a lack of proof regarding the extent to which the bus girls were involved in union activity, there having been only proof as to three of the girls actually having signed union cards.

As to the kitchen porters, the testimony satisfied the examiner, and seems practically undisputed, that these porters had been subject to considerable criticism by the chef under whom they worked, and that the discharges were for the proper reason of improving performance of kitchen help. These decisions by the examiner were based at least partially on "demeanor considerations," as stated by the trial examiner.

The trial examiner also credited the testimony of the respondent's witness as to the discharge of the room-service waiter, Hoover. This decision was based also at least partially on the trial examiner's "favorable impression of Bumpas' [respondent's supervisor] demeanor," because of which the examiner said. "I credit his testimony and find that about two weeks before September 30th, he warned Hoover of discharge if he left early without permission, that on September 29th Hoover did leave four hours early without permission and failed to report for work the next day, and was discharged for that reason."

Although, as this court has observed in NLRB v. Aken Products Co., 5 Cir., 209 F.2d 109, 110–111, "The final ob-

ligation to determine the facts * * * rests with [the Board] and * * * in all cases where examiner and board differ, if the board's findings are supported by evidence on the record considered as a whole they should be sustained by us," this court has recognized that credibility findings by the examiner contrary to those determined by the Board, are a part of the "record considered as a whole" as described by Universal Camera Corporation v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. See N. L. R. B. v. Supreme Bedding & Furniture Mfg. Co., 5 Cir., 196 F.2d 997, and N. L. R. B. v. Georgia Rug Mill, 5 Cir., 308 F.2d 89. Cf. N. L. R. B. v. Truck Drivers & Helpers, etc., 5 Cir., 228 F.2d 791, in which we noted, "what the Board here overturned was not a finding based upon credibility, as to which the trial examiner's determination is usually entitled to special weight, but a finding made *without support in the evidence.*" (Emphasis added.) 228 F.2d 791, 796.

We, of course, do not decide that where the examiner's findings, even as to credibility and demeanor, differ from the final determination by the Board, the examiner's rather than the Board's findings are to be accepted. What we decide here is that under these circumstances and on this particular record, where the examiner resolved in favor of the general counsel credibility issues of serious doubt touching on the actual knowledge of the employer of the organizational efforts and the existence of sufficient facts to establish even an 8(a) (1) violation a credibility finding such as made here in favor of the employer-witnesses as to some of the 8(a) (3) charges leaves us with a record which compels us to say that the Board's determinations as to the motivations for the discharge of the nine bus girls, and the two kitchen helpers, are without substantial evidence on the record considered as a whole, and must, therefore, be set aside.

The Order of the Board will be enforced in part and modified in part as indicated in this opinion.