NEON SIGN CORPORATION and
Industrial Electric, Inc., Petitioner
Cross-Respondent,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent
Cross-Petitioner.

No. 77-2383.

United States Court of Appeals,
Fifth Circuit.

Sept. 24, 1979.

Howard S. Linzy, New Orleans, La., for petitioner cross-respondent.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Vivian A. Miller, Washington, D. C., for respondent cross-petitioner.

Before JONES, AINSWORTH and HILL, Circuit Judges.

JONES, Circuit Judge:

The petitioners, sometimes referred to as the employers, seek review of an order of the National Labor Relations Board. The board has cross-petitioned for the enforcement of its order. The petitioners, Neon Sign Corporation and Industrial Electric, Inc., are related corporations engaged in the manufacture and sale of advertising signs. Their relationship with labor unions had been good. They had a contract with a local union of the Sheet Metal Workers International Association which was about to expire. At this time the employers were experiencing serious business and financial problems and the union was so informed. The employers and the union met six times during the period from May 12, 1975 through August 27, 1975. The bargaining began with the employers proposing a reduction in the wage scale and the union demanding higher pay. The bargaining ended with the union demanding higher pay and the employers seeking a reduction of the wage scale.[1]

The employers proposed substantial reductions in wages and related benefits such as paid holidays and paid vacation time. The employers' proposal would have eliminated the hiring hall and made substantial changes in grievance procedures.

Four bargaining sessions were held prior to May 31, 1975, when the then existing

---

1. There was evidence that during a break in a bargaining session the representative of the union suggested to the representative of the employers that if the other demands of the union were met an agreement as to wages might be reached. The suggestion was not renewed in any formal session.

contract expired. On June 1, 1975, the union voted to strike for the stated reason that the employers had refused to bargain on the union's terms and a number of the union members were already off the job, honoring the picket line of another union which was on strike. Throughout the bargaining the employers did not depart from their insistence upon a reduction of wages. The union made a number of proposals, all of which called for higher wages and increased fringe benefits. Some of the union proposals could hardly have been made with any expectation that they could be accepted. For example, the union proposed that present employees be given wage increases and that new employees be hired at a reduced pay level. Such a suggestion would hardly be welcomed by employers who were laying off some of their present employees rather than hiring new employees.

Complaints were made against the employers charging unfair labor practices. In the complaints it was alleged that the employers were refusing to bargain in good faith with the union, that negotiations were being conducted in bad faith and without any intention of reaching an agreement, and that the employers had unilaterally reduced wages pending negotiations. It was stated in the complaints that the employees were on strike.

An administrative law judge, who heard the testimony of witnesses, reached the conclusion that the employers had bargained in good faith, that the reduction in wages after the strike was not bad faith bargaining, that the strike was an economic strike,[2] and that the employers had not engaged in dilatory tactics or otherwise refused to bargain in good faith. The board, which did not see or hear witnesses, disagreed with the findings and conclusions of the administrative law judge. It found that the employers had not bargained in good faith, that they illegally reduced the wages of nonstriking employees, that the employers engaged only in "surface bargaining" and hence could not reach an impasse in bar-

gaining, and that the employees struck to protest the employers' bargaining conduct. The board entered its usual order directing the employers to cease and desist from refusing to bargain, to bargain in good faith, to reinstate employees and to post a notice.

The Court recognizes the expertise of the board in the area of good faith bargaining. The Court is also aware of its duty to determine whether the findings of the board are supported by substantial evidence on the record considered as a whole. *Universal Camera Corporation v. National Labor Relations Board,* 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

The key issue before the Court is whether the employers bargained in good faith. If it be here decided that the evidence requires a finding that the employers bargained in good faith to an impasse, such determination will dispose of the other issues arising on the appeal. As a preliminary observation it may be said that good faith bargaining does not require that at all times and under all circumstances the bargaining must result in an agreement. Nor does the refusal to agree to a wage increase evidence, in all cases, a refusal to bargain in good faith. There is no touchstone by which a determination can be made of the sometimes elusive good faith bargaining issue. *National Labor Relations Board v. Insurance Agents' International Union, AFL–CIO,* 1960, 361 U.S. 477, 80 S.Ct. 419, 4 L.Ed.2d 454.

An employer's duty to bargain in good faith is obviously "more than a willingness to enter upon a sterile discussion of union-management differences". *National Labor Relations Board v. American National Insurance Co.,* 1952, 343 U.S. 395, 402, 72 S.Ct. 824, 828, 96 L.Ed. 1027; see also *National Labor Relations Board v. Herman Sausage Co.,* 5th Cir. 1960, 275 F.2d 229. An adamant insistence upon a bargaining position is not of itself a refusal to bargain in good faith. *Chevron Oil Co., Standard Oil Co. of Texas Division v. National Labor Relations Board,* 5th Cir. 1971, 442 F.2d 1067; *Nation-*

---

**2.** The administrative law judge inadvertently referred to the strike as an "unfair labor prac-

tice strike". The board properly determined that "economic strike" was intended.

al Labor Relations Board v. Herman Sausage Co., supra. The Court recognizes that "there comes a point when hard bargaining ends and obstructionist intransigence begins." National Labor Relations Board v. Big Three Industries, Inc., 5th Cir. 1974, 497 F.2d 43. That point had not been reached in this case. Although the employers were continuing to assert that a decrease in the wage scale was essential to their survival and the union was continuing to demand more pay, an impasse had not been reached and more bargaining might have resulted in an agreement. The strike ended the bargaining.

■ Because, as to the Court seems apparent, the employers had not committed any unfair labor practice during or after the negotiations with the union, it follows that the strike was an economic strike rather than an unfair labor practice strike. National Labor Relations Board v. Mackay Radio & Telegraph Co., 1938, 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381.

The unilateral adoption by the employers of a reduced wage scale was held by the board to be a violation of that portion of the National Labor Relations Act which provides that, "It shall be an unfair labor practice for an employer—to refuse to bargain collectively with the representative of his employees." 29 U.S.C.A. § 158(a)(5). While there were a couple of meetings of no consequence after the strike began it can fairly be said that the bargaining ended when the strike began.

The record before the Court requires a determination that enforcement of the board's order be denied.

ENFORCEMENT DENIED.