**HILTON INTERNATIONAL COMPANY d/b/a Caribe Hilton Hotel, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PUERTO RICO HOTEL ASSOCIATION; San Juan Hotel Corporation d/b/a El San Juan Hotel and El Conquistador Hotel, The Puerto Rico Hotel Corporation d/b/a The Palace Hotel; Condado Holiday Inn; and Hilton International Company d/b/a La Concha Hotel-Condada Beach Hotel, Respondents.**

Nos. 1197, 1457 and 1458, Dockets 82–4022, 82–4040 and 82–4042.

United States Court of Appeals, Second Circuit.

Argued July 12, 1982.

Decided Sept. 29, 1982.

Agustin Collazo Mojica, Hato Rey, P. R. (William Lespier, Lespier, Munoz Noya & Ramirez, Hato Rey, P. R., of counsel), for petitioner-respondent Hilton Intern. Co.

Godfrey P. Schmidt, New York City (Maria Milagros Soto, Hato Rey, P. R., of counsel), for respondents Puerto Rico Hotel Corp. and Condado Holiday Inn, respectively.

Michael J. Dougherty, N. L. R. B., Washington, D. C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Andrew F. Tranovich, N. L. R. B., Washington, D. C., of counsel), for petitioner-respondent N. L. R. B.

Before CARDAMONE and WINTER, Circuit Judges, and MALETZ,* Judge, Court of International Trade.

CARDAMONE, Circuit Judge:

Most people listening to live music in a hotel are only concerned with whether the music enhances their dining or dancing pleasure. They do not consider whether the musicians are employees of the hotel or work for the leader of the band. Were the question seriously entertained, common sense would suggest that musicians working together as a group are employed by their leader. That question is precisely the one presented on appeal and on the record in this case the common sense conclusion finds full support.

On September 11, 1979, complaints were issued against the Puerto Rico Hotel Association (the Association), which represents certain Puerto Rico hotels for purposes of collective bargaining, and several of the Association's members. The complaint was based upon charges filed by the Federacion de Musicos de Puerto Rico, Local 468 (the Union). The individual hotels named in the complaints included: the San Juan Hotel Corporation d/b/a El San Juan Hotel and El Conquistador Hotel; the Puerto Rico Hotel Corporation d/b/a the Palace Hotel; the Condado Holiday Inn; and the Hilton International Company d/b/a the Caribe Hilton Hotel and the La Concha Hotel-Condado Beach Hotel. Specifically, the complaints asserted that the Union represented musicians employed by Association hotels for so-called "steady engagements" (typically in excess of one week), and that the Association's refusal to bargain collectively with the Union until the Union conceded that the musicians were independent contractors rather than hotel employees, violated Sections 8(a)(1), (3) and (5) of the Na-

---

* Honorable Herbert N. Maletz, Judge, United States Court of International Trade, sitting by designation.

tional Labor Relations Act (the Act), 29 U.S.C. §§ 158(a)(1), (3) and (5) (1976). The complaints further alleged that the Association and its named members violated Sections 8(a)(1) and (5) of the Act by using personal service contracts that disclaimed the employee status of the musicians and by suspending bargaining with the Union because the Union had filed unfair labor practice charges. Additionally, the complaints charged that the El San Juan Hotel, the El Conquistador Hotel and the Palace Hotel, acting as individual entities, violated Sections 8(a)(1) and (5) of the Act by withdrawing the Association's authority to bargain with the Union on their behalf.

After a hearing the Administrative Law Judge (ALJ) found that the band leaders in charge of the steady engagement hotel musicians were hotel supervisors, not independent contractors, and that the musicians themselves were hotel employees. The ALJ further concluded that the Union was the proper bargaining representative of the musicians and that, therefore, the Association's conditional refusal to bargain with the Union violated Sections 8(a)(1) and (5) of the Act. The ALJ also held unlawful the Association hotels' use of personal service contracts, the Association's suspension of bargaining because of the Union's filing of charges, and the three hotels' withdrawal from the Association in order to avoid collective bargaining. Subsequently, the National Labor Relations Board (the Board) issued a decision and order that summarily adopted the ALJ's decision and required the Association and certain of its members to take appropriate remedial measures.

The Caribe Hilton Hotel has petitioned for review of the Board's decision and order, arguing, in part, that the Board erred in classifying the musicians who perform at the hotels as hotel employees and the band leaders as hotel supervisors. The Board has filed a cross-application for enforcement of its order against the Association and the named hotels. Because there is not substantial evidence in the record read as a whole to support the Board's characterization of the steady engagement musicians as hotel employees and of the band leaders as

supervisory employees, we grant the petition for review and deny the cross-petition for enforcement of the Board's order.

I

■ Section 2(3) of the Act, 29 U.S.C. § 152(3) (1976), specifically excludes from the definition of "employee," and thus from statutory coverage under the Act, any "individual having the status of an independent contractor." General principles of agency law govern the distinction between "employee" and "independent contractor" for purposes of the Act. *See, e.g., NLRB v. United Insurance Co.,* 390 U.S. 254, 256, 88 S.Ct. 988, 989, 19 L.Ed.2d 1083 (1968); *Local 777, Democratic Union Organizing Committee v. NLRB,* 603 F.2d 862, 909 (D.C.Cir. 1978); *Lorenz Schneider Co. v. NLRB,* 517 F.2d 445, 446 (2d Cir. 1975). This Court in *Herald Company v. NLRB,* 444 F.2d 430, 432–35 (2d Cir.), *cert. denied,* 404 U.S. 990, 92 S.Ct. 532, 30 L.Ed.2d 541 (1971), used the common law "right to control" test for distinguishing between employees and independent contractors. Under the common law test an employer-employee relationship exists if the purported employer controls or has the right to control both the result to be accomplished and the "manner and means" by which the purported employee brings about that result. *Lorenz Schneider,* 517 F.2d at 451; *see also* Restatement (Second) of Agency § 220(1) (1958). As Judge Friendly noted, this test is difficult to apply since the result is necessarily a function of the manner and means employed. *Lorenz Schneider,* 517 F.2d at 451. Nevertheless, "the more detailed the supervision and the stricter the enforcement standards, the greater the likelihood of an employer-employee relationship...." *Id.* Factors which may be considered in determining employee status include: whether the purported employee is engaged in a distinct occupation or business; whether the work involved is usually done under an employer's direction or by an unsupervised specialist; the skill involved; who supplies the instrumentalities and place of performance; the length of employment; the method of payment (by the time or by the job);

whether the work is part of the employer's regular business and/or necessary to it; and the intent of the parties creating the relationship. Restatement (Second) of Agency § 220(2). No single factor is determinative, *Lorenz Schneider,* 517 F.2d at 449.

## II

The ALJ relied on the following facts in finding that the hotels control the members of the steady engagement bands. The hotels determine working hours including overtime, and the locations within the hotels where the bands play. Occasionally, the hotels require certain types of music and direct that the music's volume be increased or decreased. The maitre d'hotel can order music stopped to speed up food service. Additionally, the hotels determine the size of the bands needed and sometimes require that size be increased to produce a certain sound.

Although these facts indicate that the hotels control each band's final product (music of the type requested by the hotels at the time and place desired), these facts fail to demonstrate any significant hotel regulation over the means by which bands produce the music. Instead, the record reveals that the band leaders exercise all the significant control over the manner of their own and their musicians' performances. The leaders hire, fire, instruct and discipline the musicians in their bands without consulting with or following any guidelines set by the hotels. In fact, Association hotel officials do not generally hire, discipline or fire individual band members; an Association hotel contractually can only terminate the engagement of an entire band. Moreover, the leaders themselves, and not the hotels, select additional and replacement musicians, approve musicians' sick leave and vacations, schedule and conduct band rehearsals, and select the repertoire, instruments used, style, tempo, and other standards of performance. The leaders occasionally arrange outside employment for their bands such as television shows, club dates, single engagements and recording sessions. Although some hotels require band members to dress uniformly during their performances, the band leaders and musicians, not the hotels, select and pay for their own uniforms.

A further indication that steady engagement musicians and band leaders are not employees of Association hotels arises from the fact that the musicians and leaders are not subject to the same personnel practices and disciplinary rules as are admitted hotel employees. For example, steady engagement musicians and band leaders do not have access to hotel grievance procedures; they do not file standard hotel job applications and do not have hotel personnel records; they do not receive hotel uniforms and are not eligible for employee paid vacations. Instead, the various steady engagement bands contract with the hotels, often through their agents, not for the services of their individual members but for the services of the entire band. In addition, while some Association hotels have issued general rules of conduct barring musicians and leaders from drinking on stage, gambling in hotel casinos, and socializing with guests, the ALJ acknowledged that band members are not given detailed rules regulating their conduct, as are admitted hotel employees. Further, the mere fact that a hotel imposes certain restrictions on the conduct of the musicians to protect the goodwill of the hotel and the welfare of the its customers is not of controlling significance. *Cf. Lorenz Schneider,* 517 F.2d at 451 (franchisor's imposition of standards upon operations of franchisee to protect goodwill not sufficient evidence of control to establish employer-employee relationship).

In short, the record in this case indicates that the Association hotels exercise control over the type, time and location of music produced by the steady engagement bands; nevertheless, it does not appear that they have the right to exert any significant authority over the manner in which either the band leaders or the musicians perform. Thus, the evidence establishes that the steadily-engaged hotel musicians are not hotel employees, but rather, employees of their band leaders.

Given the musicians' status as employees of the band leaders, we must determine whether the band leaders are independent contractors or hotel supervisors. The Board argues that even if the Association does not exercise over the musicians and leaders that quantum of direct control normally demonstrative of an employer-employee relationship, the band leaders are hotel supervisors who exercise control over the musicians in the capacity of autonomous department heads, such as a chef or maitre d'hotel. We find this argument unpersuasive. Leaders usually form their bands before contracting with Association hotels. Most bands bear their leader's name and build up their reputations under that name. Leaders sometimes arrange outside engagements for their groups, evidencing an independent entreprenurial status not normally associated with the staffs of hotel kitchens or dining rooms. Significantly, leaders usually deal with Association hotels through booking agents and are not subject to the same hotel personnel procedures as are chefs and maitre d's.

Although the record contains references to a few instances in which bands stayed on at Association hotels with new leaders after their original leaders had left, there are also references to whole groups remaining together and moving to different engagements. In fact, one of the groups that had stayed on intact when its original leader left later became a new group and then moved on intact under the group's subsequent leader. Thus, the steadily-engaged musical groups controlled by the band leaders have an independent identity that is not characteristic of hotel departments.

Other Restatement factors commonly used in determining employee status support the conclusion that the steadily-engaged leaders and musicians are not hotel employees. All the parties acknowledged that the musicians and band leaders who perform in Association hotels are highly skilled members of a clearly distinct occupation. Moreover, the band members usually provide their own instruments and their own sheet music.

Although the ALJ apparently placed great emphasis on the fact that Association hotels provide their steady-engagement bands with rooms in which to perform, this fact is not always significant. For instance, building construction firms generally perform their services at locations provided by the parties with whom they contract without jeopardizing their status as independent contractors.

The ALJ's decision also implies that the method used to pay Association hotel musicians indicates an employer-employee relationship. Steady engagement bands typically contract with Association hotels to perform for a lump-sum amount, exclusive of overtime, based upon the number of band members and hours worked per week. Association hotels, however, usually pay each musician through an individual employee payroll check, instead of merely distributing to the leader the entire lump-sum. The hotels also withhold payroll taxes from the musicians' paychecks. We do not accord much weight to this fact, however, since the employees of independent construction contractors engaged by at least one Association hotel are paid in the same manner.

It is unclear how much consideration, if any, the ALJ attached to the fact that the Association hotels hire musical groups for long term engagements. Although some bands perform at Association hotels for periods in excess of a year, duration of employment does not in and of itself suggest employee status. *Cf. Associated Musicians of Greater Newark, Local 16,* 206 NLRB 581 (1973), *aff'd,* 512 F.2d 991 (D.C.Cir.1975) (orchestra members who performed exclusively at banquet hall lounge for over four years not banquet hall employees). As developed at oral argument, the mere fact that Guy Lombardo played in the main ballroom of the Roosevelt Hotel for countless years did not make him and his Royal Canadians Roosevelt Hotel employees.

### III

On review, the Board's findings are entitled to deference if supported by sub-

stantial evidence in the record taken as a whole, *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *NLRB v. Donald E. Hernly, Inc.,* 613 F.2d 457, 462 (2d Cir. 1980). The Supreme Court made clear in *United Insurance* that although the determination of employee status requires the application of law to facts and does not involve any special Board expertise, a reviewing court applying the substantial evidence test may not "displace the Board's choice between two fairly conflicting views even though the court would justifiably have made a different choice had the matter been before it *de novo.*" 390 U.S. at 260, 88 S.Ct. at 991 (quoting *Universal Camera Corp.,* 340 U.S. at 488, 71 S.Ct. at 464); *see Lorenz Schneider,* 517 F.2d at 452. Upon careful consideration, we find that although there is some evidence to support the Board's determination, it does not constitute substantial evidence *when viewing the record as a whole.*[1] The evidence instead establishes with sufficient certainty that the band leaders are independent contractors who employ the musicians who perform in the bands.

Accordingly, the petition for review is granted and the cross-petition for enforcement is denied.

---

[1] Although each case involving the determination of employee status necessarily turns upon the particular facts involved, this Court cannot help but take note of the Board's decision in *Associated Musicians of Greater Newark, Local 16,* 206 NLRB 581 (1973), *aff'd,* 512 F.2d 991 (D.C.Cir.1975). In *Local 16,* the Board held that the members of a steadily-engaged lounge orchestra were not employees of the banquet hall restaurant complex in which they performed despite the presence of the following facts which the Board urges us to rely on here: the orchestra performed exclusively at the banquet hall lounge for over four years; the banquet hall's management told the orchestra what types of music not to play; management required the orchestra members to maintain a particular appearance; and the hall controlled the time of performance and forbid certain behavior by orchestra members, such as smoking on stage.