**Harold L. WAKEFIELD, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 85–7149.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 13, 1985.

Decided Jan. 7, 1986.

Harold L. Wakefield, pro se.

Kenneth B. Hipp and Lawrence J. Song, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for respondent.

Before DUNIWAY, ANDERSON, and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

On February 10, 1978, the National Labor Relations Board ("Board") issued a decision and order finding, *inter alia*, that Greyhound Taxi Co. ("Greyhound Taxi") had violated the National Labor Relations Act because its agents had physically assaulted Harold Wakefield for his union activities, resulting in his constructive discharge. *Greyhound Taxi Co.*, 234 NLRB 865 (1978). The Board's order required Greyhound Taxi to offer Wakefield reinstatement and to make him whole for any loss of earnings he might have suffered as a result of the company's unfair labor practices. On February 27, 1985, the Board issued a supplemental decision and order determining the period for which Wakefield was owed backpay. *Greyhound Taxi Co.*, 274 NLRB No. 60 (1985) ("Order"). This latter order is the subject of this appeal.

### FACTS

In October 1974, after six years of steady work as a cab driver with Greyhound Taxi, Wakefield broke his arm while resisting an attempted robbery by a customer. Wakefield alleged that during the three months he was disabled, he was harassed by Greyhound Taxi officials who believed that he was malingering. Wakefield responded by stepping up his union activities and his relationship with his employer continued to deteriorate. In December 1975, the General Counsel finally filed an NLRB action on behalf of Wakefield charging Greyhound Taxi with unfair labor practices.

In February 1976, before the NLRB action was heard, Greyhound Taxi's animosity towards Wakefield culminated in a physical assault by the company's agents. Wakefield, who sustained minor injuries (a sore back and sprained ankle, primarily) in the attack, did not return to work at Greyhound Taxi. Soon afterwards, he developed a severe post-traumatic anxiety neurosis that required medical treatment and prevented him from working for more than five years.

On February 10, 1978, the Board issued an order finding that Greyhound Taxi had committed unfair labor practices by its harassment, assault, and constructive discharge of Wakefield. *Greyhound Taxi Co.,* 234 NLRB 865 (1978). On October 7–8, 1981, supplemental hearings were held before an Administrative Law Judge ("ALJ") to determine the amount of backpay due Wakefield as a result of Greyhound Taxi's unlawful conduct. The primary issue at the hearing was whether Wakefield was psychologically disabled from working, and, if so, whether Greyhound Taxi was responsible for the disability. After careful consideration of the evidence presented, the ALJ found that "Wakefield's disability resulted solely from the circumstances surrounding his attack and unlawful termination."

On February 27, 1985, the Board issued its supplemental decision and order adopting the ALJ's findings with modifications. While agreeing that Wakefield was disabled, the Board, in a split decision, held that his psychological disability was the result of a preexisting mental condition and was not, therefore, caused by Greyhound Taxi's unfair labor practices. Accordingly, the Board concluded that Greyhound Taxi's liability for backpay terminated when Wakefield recovered from the minor physical injuries incurred in the assault. In support of its conclusion, the Board cited Wakefield's erratic employment history, previous psychiatric treatment, and the perceived weaknesses in the testimony of Dr. Groesbeck, the primary witness called by the General Counsel. Order at 3.

Wakefield, appearing *pro se,* appeals the supplemental order as modified. The Board also seeks enforcement of its supplemental order.

## DISCUSSION

We must affirm if the Board has applied the correct legal standards and there is substantial evidence in the record as a whole to support its findings and conclusions. *Local Union No. 76 v. NLRB,* 742 F.2d 498, 501 (9th Cir.1984). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *NLRB v. Mercy Peninsula Ambulance Service,* 589 F.2d 1014, 1018 (9th Cir.1979) *quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938). The standard of review does not change when the Board and its ALJ disagree in their findings or conclusions. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 496, 71 S.Ct. 456, 468–69, 95 L.Ed. 456 (1951).

We cannot enforce the Board's supplemental order because it fails to apply the correct legal standard. The Board overlooked the time-honored legal principle that a wrongdoer takes his victim as he finds him when it held that Wakefield's predisposition towards mental illness relieved Greyhound Taxi of responsibility for his psychological disability. *See* W. Prosser, *Law of Torts* 262 (4th ed. 1971). Dissenting Board member Dennis stated the law correctly when she concluded: "The uncontradicted psychiatric testimony establishes, at the very least, that [Greyhound Taxi's] unlawful conduct aggravated Wakefield's nondisabling mental condition into a disabling one. Such aggravation of a preexisting condition is all the proof the Board requires." Order at 5.

We are also unable to enforce the Board's decision because it fails to base its findings on substantial evidence in the record. The Board rejected the ALJ's findings of causation in large part because of perceived weaknesses in the testimony of the General Counsel's primary witness, Dr. Groesbeck. The Board found Dr. Groesbeck's testimony equivocal because he did not conclude that the assault "standing alone" triggered Wakefield's disability. Order at 3. The Board also thought that many of the workplace incidents Dr. Groesbeck identified as contributing to Wakefield's illness were, in fact, "entirely lawful." *Id.* In making these arguments the Board fails to appreciate that the assault was not the only unfair labor practice attributable to Greyhound Taxi and thus

need not be shown to be the sole cause of Wakefield's disability to hold the company entirely responsible for Wakefield's lost wages since his unlawful discharge.

The undisputed record shows that Greyhound Taxi began harassing Wakefield because of his union activities in early 1975. By fall, the campaign had intensified to include threats and intimidation. The assault and constructive discharge followed in February 1976. In the underlying unfair labor practice proceeding, the Board considered this evidence and accepted the ALJ's findings that Greyhound Taxi's unlawful conduct included imposition of "intolerable working conditions which eventuated in a physical assault...." Dr. Groesbeck identified the particular incidents surrounding the physical assault on Wakefield as the primary cause of his condition. Contrary to the view of the Board majority, this opinion does not undercut the ALJ's conclusion that Greyhound Taxi's overall pattern of unlawful conduct—including threats, harassment, or intimidation, and finally the physical assault—caused Wakefield's psychological disability. Indeed, as quoted by the Board majority, Dr. Groesbeck stated that "the primary element of causation was the work situation and the variety of incidents that had taken place that built up over the previous two years." Order at 3.

Moreover, two additional psychiatrists, representing interests adverse to Wakefield, concurred in Dr. Groesbeck's diagnosis of Wakefield's disability and his identification of the disability's cause. Because these concurring evaluations were uncontradicted, the Board could not reasonably conclude, contrary to the judgment of the ALJ, that Greyhound Taxi's unfair labor practices did not cause Wakefield's psychological disability.

Because we agree with the ALJ's finding that Greyhound Taxi's unlawful conduct caused Wakefield's psychological disability, we deny enforcement of the Board's supplemental order and remand the matter to the Board to reassess the amount of back pay due to Wakefield.