GMN GEORG MULLER NURNBERG AG, PLAINTIFF *v.* UNITED STATES, DEFENDANT, AND TORRINGTON CO. AND FEDERAL-MOGUL CORP., DEFEND-ANT-INTERVENORS

Court No. 91–08–00583

(Dated April 20, 1993)

*Grunfeld, Desiderio, Lebowitz & Silverman (Bruce M. Mitchell, David L. Simon* and *Philip S. Gallas)* for plaintiff.

*Stuart E. Schiffer,* Acting Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Velta A. Melnbrencis);* of counsel: *Dean A. Pinkert,* Attorney-Advisor, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.

*Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart, Wesley K. Caine* and *Myron A. Brilliant)* for defendant-intervenor The Torrington Company.

*Frederick L. Ikenson, P.C. (Frederick L. Ikenson, J. Eric Nissley, Larry Hampel* and *Joseph A. Perna, V)* for defendant-intervenor Federal-Mogul Corporation.

## OPINION

TSOUCALAS, *Judge:* Plaintiff, GMN Georg Muller Nurnberg AG ("GMN"), moves pursuant to Rule 56.1 of the Rules of this Court for partial judgment on the agency record as to Count 13C of its complaint claiming that the Department of Commerce, International Trade Administration's ("ITA" or "Commerce") proposed assessment rate methodology for exporter's sales price ("ESP") sales is contrary to law and not supported by substantial evidence on the record.

The administrative determination under review is the ITA's final results in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review ("Final Results"),* 56 Fed. Reg. 31,692 (1991).

## BACKGROUND

On June 11, 1990, the ITA initiated an administrative review of ball bearings, cylindrical roller bearings, spherical plain bearings and parts thereof from Germany. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom Initiation of Antidumping Administrative Reviews,* 55 Fed. Reg. 23,575 (1990). GMN participated in this review. *Id.*

On March 15, 1991, the ITA published its preliminary determination in the administrative review. *Antifriction Bearings (Other Than Ta-*

*pered Roller Bearings) and Parts Thereof from the Federal Republic of Germany; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews,* 56 Fed. Reg. 11,200 (1991).

On July 11, 1991, the ITA published its Final Results in this proceeding. *Final Results,* 56 Fed. Reg. at 31,692.

DISCUSSION

In reviewing a final determination of Commerce, this Court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence has been defined as being "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). It is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *The Timken Co. v. United States,* 12 CIT 955, 962, 699 F. Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed. Cir. 1990).

In this case, plaintiff contests Commerce's method of calculating the antidumping duty assessment rate for ESP transactions. In its investigation, Commerce employed separate methodologies for exporter sales price and purchase price transactions in order to arrive at appropriate assessment rates.

For ESP sales, Commerce divided the total potential uncollected dumping duties ("PUDD") by the total entered value of those reviewed sales for each importer. Because of the enormous volume of ESP transactions, Commerce sampled the transactions of each company with more than 2,000 such transactions. *Final Results,* 56 Fed. Reg. at 31,698–99. From this sample, a PUDD was derived for each company. Commerce stated that "[a]lthough this approach will result in the assessment of a dumping margin based, to some extent, on sales of merchandise imported outside the [period of review], it is the most accurate rate that can be calculated on the basis of the information on the record." *Id.* at 31,694.

Plaintiff claims that the "better" way for Commerce to have acted would have been for it to calculate the assessment rates based on the ratio of *total* dumping duties owed to the total entered value of the subject merchandise during the period of review. Commerce, however, could not have followed this method for two reasons. First, Commerce was unaware of the size of the universe from which the sample was drawn. Second, Commerce did not have information about the total entered value of units entered during the review period. Thus, Commerce was forced to use sampling techniques and use the sales data they had.

It is well-established that Commerce is granted flexibility in selecting the appropriate methodology. *ICC Indus., Inc. v. United States,* 812 F.2d 694, 699 (Fed. Cir. 1987); *Consumer Prod. Div., SCM Corp. v. Silver Reed America, Inc.,* 753 F.2d 1033, 1039 (Fed. Cir. 1985). As long as Commerce's "decision is reasonable, then Commerce has acted within its authority even if another alternative is more reasonable." *See Koyo Seiko Co. v. United States,* 16 CIT 366, 372, 796 F. Supp. 517, 523 (1992).

In this case Commerce's methodology was a reasonable means of achieving the end result. *Id.* Therefore, Commerce's actions were justified and in accordance with law.