NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

04-3461

GARY WARREN,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

_____

DECIDED: August 4, 2005

_____

Before MICHEL, Chief Judge, SCHALL and LINN, Circuit Judges.

PER CURIAM.

Gary Warren petitions for review of the final decision of the Merit Systems Protection Board, Docket No. AT-0752-01-0872-M-1, affirming his removal from his position as Mailhandler with the United States Postal Service. We affirm.

I.

Mr. Warren was removed effective July 28, 2001 for unsatisfactory attendance due to five unscheduled absences in April and May of 2001. Since 1999, Mr. Warren attributed most of his absences to his medical condition, including "back, sinus, and psychological" problems and has continuously stated that his absences qualify for leave

under the Family and Medical Leave Act (FMLA). In March 1999, following mediation, Mr. Warren entered into an agreement with Postal Service management regarding his attendance. The agreement stated that (1) Mr. Warren would recertify his qualification for FMLA by providing new medical documentation every six months; (2) the Postal Service would provide notice of the needed medical documentation thirty days prior to the due date; and (3) the Postal Service would notify Mr. Warren when his work hour balance was close to or fell below the 1,250 hours threshold required for FMLA.

Between April 1999 and April 2000, Mr. Warren continued to be periodically absent from work. In April 1999, Mr. Warren was absent for 17 days, claiming that he was on FMLA. However, the Postal Service deemed that Mr. Warren was Absent Without Leave (AWOL) since he did not have enough hours to meet the requirement for leave under the FMLA. As a result, the Postal Service issued a letter of warning notifying him that he could be disciplined for this type of behavior in the future. In September 1999, the Postal Service imposed a 7-day suspension due to 44 cumulative hours of unscheduled absences and tardiness during May to August 1999 and again warned Mr. Warren of possible harsher disciplinary actions. Mr. Warren responded that every one of the absences had been approved. In April 2000, the Postal Service imposed a 14-day suspension due to 1.34 cumulative hours of AWOL over six days during January and February of 2000. Mr. Warren replied that he was having car problems.

On April 28, 2000, Mr. Warren went on approved FMLA. By July 1, 2000, he had used the maximum amount of leave (480 hours) allowed under the FMLA statute.

When he tried to return to work on August 21, 2000,[1] the Postal Service told him that he needed to provide clearance from his doctor to return from FMLA leave. On September 21, 2000, Mr. Warren provided this clearance which allowed him to return to work on September 25, 2000. On November 11, 2000, the Postal Service terminated Mr. Warren for unsatisfactory attendance from August 21 to September 25, 2000. Mr. Warren appealed this decision to the Board. On March 8, 2001, the Board reversed the Postal Service's decision and reinstated Mr. Warren retroactively effective to November 11, 2000. The Board held that as the Postal Service did not give Mr. Warren a deadline to submit the doctor's clearance, his removal was improper. Mr. Warren returned to work on March 15, 2001.

In his first two months back on the job, Mr. Warren incurred eight more unscheduled absences. On the day of each absence, he called stating that he would not be coming to work and seeking leave under FMLA. On April 25, 2001, the Postal Service notified Mr. Warren that he did not meet the minimum "hours worked" for FMLA. The first three absences were incorrectly approved by his new supervisor, Mr. Gould, who did not know that Mr. Warren was ineligible for FMLA. As a result of Mr. Gould's error, the Postal Service did not charge Mr. Warren for these first three absences. Of the last five absences, Mr. Warren's supervisor approved four days as sick leave, since Mr. Warren did not qualify for FMLA. The final absence was classified as AWOL since Mr. Warren did not qualify for FMLA and he refused to provide supporting medical documentation for sick leave.

---

[1] From the record, it is not clear what Mr. Warren's status was from June 30, 2000 to August 21, 2000.

In the end, the Postal Service removed Mr. Warren effective July 28, 2001 for unsatisfactory attendance. Focusing on the "unscheduled" nature of the absences, not whether they were later approved, the decision letter stated that these absences clearly affected the efficiency of postal operations by placing a burden on the service and the other employees.

Mr. Warren appealed his removal to the Board and also alleged that his removal was motivated by retaliation for filing a prior MSPB appeal. The Board upheld the Postal Service's action, finding that the agency had established Mr. Warren's unsatisfactory attendance, the existence of a nexus between the sustained charges and the efficiency of the service, and finally the reasonableness of the penalty imposed by the agency. The Board found that Mr. Warren did not establish that his removal was motivated by retaliation, because he did not offer any evidence that the agency's removal was related to his prior MSPB appeal and because his supervisor at the time of his removal played no part in and knew little about Mr. Warren's history with the agency. This appeal followed.

II.

A.   Standard of Review

When reviewing a decision of the Board, pursuant to 5 U.S.C. § 7703(c) (2000) this court must hold unlawful and set aside any agency action, finding or conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. Substantial evidence is defined as "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." <u>Universal Camera Corp. v. Nat'l Labor Relations Bd.</u>, 340 U.S. 474, 477 (1950).

B.      Removal for Unsatisfactory Attendance

To sustain removal, the Postal Service must prove three elements by preponderance of the evidence: (1) the employee actually committed the charged conduct; (2) a sufficient nexus exists between the conduct and the efficiency of the Agency; and (3) the penalty is reasonable. <u>See Pope v. U.S. Postal Serv.</u>, 114 F.3d 1144, 1147 (Fed. Cir. 1997). Mr. Warren does not appeal the Board's findings on the latter two elements.

On the remaining point, Mr. Warren argues that the evidence clearly weighs against the decision of the Board to hold him liable for unsatisfactory attendance. Mr. Warren's arguments fall into two main categories. We will discuss each in turn.

1.      Absences Not "Unscheduled"

Mr. Warren contends that his absences were not "unscheduled" for three reasons.[2] First, Mr. Warren argues that his absences were not unscheduled since he made his best effort to avoid absences and since he called before every shift that he missed. Mr. Warren points to his Notice of Proposed Removal letter dated June 13, 2001 that quoted the Employee Labor and Relations Manual (ELM) 511.43 stating that employees must make every effort to avoid unscheduled absences. Mr. Warren argues that the Postal Service has no proof that he did not use "his utmost best effort in advance notification." As evidence of his best effort, Mr. Warren states that he called "well prior" to his schedule reporting time. While the record does not reflect the Board's

---

[2] At trial, Mr. Warren did not dispute that his absences were unscheduled.

findings regarding the level of Mr. Warren's effort, postal records do show that for the absences in April and May 2001, Mr. Warren called the Postal Service no more than four hours and fifteen minutes prior to his reporting time.[3]  The Board found that any absence which is "not requested and approved in advance" is considered "unscheduled" under ELM 511.41.  The portions of the ELM in the record do not specify the amount of advanced time required for approval of an absence, but presumably four hours beforehand is not enough.  The Postal Service did not dispute that Mr. Warren called prior to each absence; rather, his many unscheduled absences represented a pattern of misconduct which negatively affected the efficiency of the Postal Service.  The Board pointed to Mr. Warren's repeated counseling on his unsatisfactory attendance and found that Mr. Warren's absences were unscheduled.

Second, Mr. Warren contends that his absences were not "unscheduled" because his type of condition should fall into the "emergency category."  Per ELM 666.82, employees who fail to report for duty will be considered AWOL except in actual emergencies which prevent them from obtaining permission in advance.  Mr. Warren states that he had actual emergencies on those five days which prevented him from obtaining permission in advance.  However, Mr. Warren offers no proof as to the emergency nature of these absences which, if they were true emergencies, presumably would have required immediate medical attention creating acceptable documentation.

Finally, Mr. Warren argues that as result of previously submitted medical documentation, the Postal Service was on notice that he might regularly need to take

---

[3]  Mr. Warren called forty minutes prior for the April 25, 2001 absence, two hours and ten minutes prior for the May 9, 2001 absence, ten minutes prior for the May 15, 2001 absence, and four hours and fifteen minutes prior for the May 23-24, 2001 absence.

leave due to his permanent disability and therefore his absences should not be considered "unscheduled." Mr. Warren submitted documentation on October 25, 1999 and April 25, 2001 from his doctor regarding his condition. However, Mr. Warren submitted this documentation for the purposes of qualifying for FMLA and attempting to be placed in a light duty status. This previous documentation is not acceptable to explain his later unscheduled absences. Notwithstanding, the Postal Service's policy is that acceptable documentation does not negate an unscheduled absence, it merely allows for an employee to receive pay for the period of the absence. Thus, the previously submitted documentation is not relevant to whether or not his absences were unscheduled.

The Board had substantial evidence to find that Mr. Warren was absent on the dates in question and that each absence was "unscheduled." Mr. Warren's arguments on appeal ignore the distinction between "approved absences" and "unscheduled absences." Under Board precedent, the Postal Service may discipline an employee for use of unscheduled leave even if that leave is later approved. Prior to taking disciplinary action, the Postal Service must show that the employee did not request leave in accordance with the Postal Service's leave-requesting procedures and the employee was on clear notice that these unscheduled absences may result in disciplinary action. Hamilton v. Merit Sys. Prot. Bd., 84 M.S.P.R. 635 (1999). Mr. Warren does not dispute that he was absent from work on the days in question. Based upon testimony of the Labor Relations Specialist, the Board found that Mr. Warren was counseled in both his 7-day and 14-day suspension letters on the consequences of his unsatisfactory attendance. Therefore, the Board had substantial evidence to support a

charge of unsatisfactory attendance since Mr. Warren's absences were unscheduled and Mr. Warren had the proper notice of his possible removal.

2.      Absences Should Be Considered FMLA

In addition, Mr. Warren contends that his absences should not be characterized as unscheduled absences because they should have been approved as leave as under FMLA.[4]  Mr. Warren argues that he has met the requirements for FMLA and therefore should be eligible to take intermittent leave under the statute.  At the Postal Service to qualify for FMLA, an employee must have been employed by the Postal Service for at least twelve months, must have incurred at least 1,250 hours of service during the previous twelve months and must submit medical documentation of the condition which qualifies for FMLA.  No one disputes that Mr. Warren has been employed by the Postal Service for at least twelve months.

Mr. Warren maintains that he had nearly the 1,250 hours of service required by the FMLA statute.  Based on applicable twelve month period, the parties differ on how

---

[4]  The Family and Medical Leave Act (FMLA) of 1993 states that an eligible employee shall be entitled to a total of 12 work weeks of unpaid leave during any 12-month period because of a serious health condition that makes the employee unable to perform the functions of his position.  29 U.S.C. §§ 2611-2619(a)(1)(D) (2000).  FMLA may be taken all at once or "intermittently."  29 C.F.R. § 825.203 (2004).  As of February 5, 1994, employees of the Postal Service subject to the collective bargaining agreement are covered by FMLA.  See Ramey v. U.S. Postal Serv., 70 M.S.P.R. 463 (1996).

To be eligible for FMLA, an employee (1) must have been employed by the employer for at least 12 months and (2) must have accrued at least 1,250 hours of service during the previous 12-month period.  29 U.S.C. § 2611(2) (2000).  Finally, the employer may require that the employee who is requesting FMLA for a serious health condition provide a supporting medical certification.  29 U.S.C. § 2613(a)-(b) (2000).  This documentation shall be sufficient if it states the date on which the condition commenced, its probable duration, appropriate medical facts regarding the condition and, in the case of certification for intermittent leave, the expected duration of the intermittent leave.  Id.

Mr. Warren's hours of service should be calculated. Under its calculation, the Board found that Mr. Warren had at most 1240.49 hours of service, which is less than the required 1,250 hours for FMLA.[5] In his reply brief, Mr. Warren offers a new theory arguing that the Board's FMLA calculation is missing forty hours and therefore Mr. Warren should be given credit for 1,280 hours of service.[6] This court has held that a party in an MSPB proceeding must raise an issue before the administrative judge if the issue is to be preserved for review in this court. Bosley v. Merit Sys. Prot. Bd., 162 F.3d 665, 668 (Fed. Cir. 1998). From a review of the record, it does not appear as though Mr. Warren argued this "missing forty hours" discrepancy before the administrative judge; therefore, this court will not consider this argument.

As part of his "missing forty hours" argument, Mr. Warren contends that the issue of whether the definition of "hours worked" under FMLA statute includes hours on

---

[5] The Board based its calculation on the testimony of the Mr. Warren's FMLA coordinator. For the April 25, 2001 absence, the period in question in terms of calculating FMLA is April 25, 2000 to April 25, 2001. Based on that period, the FMLA coordinator testified that Mr. Warren should be credited with 328.49 hours for hours worked from March 15, 2001 to June 1, 2001 and 704 hours for November 11, 2000 to March 15, 2001 from his reinstatement by the Board, for a total of 1032.49 hours. Normally, the FMLA coordinator testified, she does not include administrative leave periods in the calculation for FMLA because this is a period that an employee is paid for but does not actually work. However, even if Mr. Warren's 208 hours of administrative leave from September 24, 2000 to November 11, 2000 is included in the calculation, the total hours of service is only 1240.49. Therefore, even under the more generous standard, the Board found that Mr. Warren still had less than the required 1,250 hours.

[6] Mr. Warren bases his new calculation on a review of the calendar between September 26 and November 11, 2001. Mr. Warren finds thirty-one working days, which at eight hours per day of work, is a total of 248 hours. For the same period, the Board had found only 208 hours. However, since this argument was not presented before the Board it is not clear how Mr. Warren defines "working days" and whether this definition includes the holidays of Columbus Day and Veteran's Day or whether Mr. Warren normally worked on weekends. As a result, this court does not have enough information to properly evaluate this argument.

administrative leave or other "forced leave"[7] is an issue of first impression for this court. While this may one day be an issue for decision, the facts in this case do not require us to decide this issue at this time. As noted, the Board found that even if the period of administrative or "forced" leave were added, Mr. Warren would not have the requisite 1,250 hours necessary to be eligible for FMLA.

Next, Mr. Warren argues that based on the mediation agreement from March 1999, he should have been given 30 days notice that his hours of service had fallen below the threshold required for FMLA. Mr. Warren states that his first notice was in an April 25, 2001 letter from his supervisor and thus the Postal Service should not consider those absences from April 25 to May 25, 2001 for the purposes of his removal, as they occurred within thirty days of his notice letter. However, Mr. Warren has misinterpreted the mediation agreement. The thirty-day notice period in the mediation agreement applies to the requirement for recertifying medical documentation, not to the notification of work hour balance. The mediation agreement is silent as to when the Postal Service must notify Mr. Warren that he is close to or below the 1,250 hours requirement. As a result, the April 25, 2001 letter meets the Postal Service's notice obligation under the medication agreement and Mr. Warren is not entitled to any grace period. Despite all Mr. Warren's arguments on appeal, the Board had sufficient evidence to find that Mr. Warren lack the requisite number hours of service for FMLA.

Finally, Mr. Warren argues that the medical certification he submitted on October 19, 1999 and again on April 26, 2001 meets the requirements for FMLA. While this may be the case, this documentation does not specifically explain if the later five absences

---

[7] On appeal, Mr. Warren labels the period from September 26, 2000 to November 11, 2000 including the new forty hours as "forced leave."

from April and May of 2001 were actually related to Mr. Warren's medical condition. The Postal Service has the discretion to require specific documentation when an employee requests FMLA to determine if the absence should be covered by FMLA. The Postal Service requested documentation from Mr. Warren to explain these absences and he did not provide it. Therefore, the previously submitted documentation for FMLA is not sufficient to meet this requirement.

The Board correctly noted that in the past it has considered the employee's rights and requirements under FMLA to be relevant and material considerations in determining if the Postal Service has proven its charge of unsatisfactory attendance, provided that the employee met the FLMA requirements. Hamilton, 84 M.S.P.R. at 635. However, in order for an employee to be qualified for FMLA, that employee must meet the eligibility requirements. As previously discussed, the Board properly found that Mr. Warren did not qualify for FMLA.

Most of Mr. Warren's arguments center on his FMLA status or his light duty status due to his condition and the associated documentation requirements for each. In fact, the documentation requirements for either status are not relevant to his removal. Mr. Warren was not dismissed due to his light duty status, nor was he dismissed for failure to document his need for FMLA. Rather, the Postal Service dismissed Mr. Warren for unsatisfactory attendance due to his five unscheduled absences.

Therefore, we affirm the decision of the Board since the Board had substantial evidence to affirm a charge of unsatisfactory attendance and Mr. Warren did not appeal the other elements of the analysis.

C. Retaliation

To establish retaliation as an affirmative defense, the employee must show that: (1) the employee engaged in a protected activity; (2) the accused official knew of that protected activity; (3) the adverse action under review could have been retaliation under the circumstances; and (4) there was a genuine nexus between the retaliation and the adverse action. Webster v. Dep't of the Army, 911 F.2d 679, 689 (Fed. Cir. 1990).

Mr. Warren argues on appeal that there is "substantial competent evidence" supporting retaliation in his case. Mr. Warren contends that there was "an undercurrent of retaliatory animus" towards him due to his light duty status and his favorable decision by the Board in his prior appeal. Highlighting coincidences in dates of personnel actions against him, Mr. Warren supports his contention by arguing that his new supervisor was influenced by others to harass him.

Mr. Warren points to a coincidence that the Postal Service requested medical documentation for his light duty status on May 31, 2001, the same day that his May 6, 2001 leave was disapproved for inadequate FMLA documentation. While the dates are the same, it is not necessarily "retaliatory animus" for Mr. Warren's supervisor to deal with all of Mr. Warren's personnel issues on the same day. Mr. Warren offers no proof, other than this bare assertion, to support his claim.

Mr. Warren argues that his new supervisor, Mr. Gould, was influenced and assisted by others in retaliating against him. But, the Board found that as his new supervisor after Mr. Warren was reinstated, Mr. Gould knew little about Mr. Warren's personnel history. The Board supported this finding by pointing to the incident in March 2001, when Mr. Gould mistakenly approved several of requests under FMLA when in fact Mr. Warren was not eligible for FMLA. After this error and upon discovering Mr.

Warren's attendance history, it was reasonable for Mr. Gould to ask for assistance from others regarding Mr. Warren's case. As a result, the Board found that Mr. Gould was not acting as though he harbored a retaliatory animus towards Mr. Warren.

Finally, Mr. Warren charges that Mr. Gould continued to ask for documentation of his medical condition through harassing and misleading letters. The letters which Mr. Warren deems as "challenges" to his light duty and FMLA status, we hold, were reasonable requests for updated information on his condition. The mediation agreement that Mr. Warren signed with the Postal Service on March 31, 1999 stated that he was required to submit updated medication documentation to the Postal Service every six months. Since the agreement was dated March 1999, Mr. Warren should have been submitting documentation at six month intervals. In fact, Mr. Warren failed to do so, since the only paperwork that he submitted was on October 15, 1999 and April 25, 2001. Further, Mr. Leonard Coulombe, the Senior Manager for Distribution of Operations and the Deciding Official in Mr. Warren's removal, testified that even approved permanent light duty employees must bring in updated documentation to see if there have been any changes in their limitations. Finally, while the letter dated May 31, 2001 may have been misleading, due to a clerical error, this was not the only notice that Mr. Warren received about the need for medical documentation. The Board found that there was no evidence that any of the agency's communications regarding Mr. Warren's light duty status had anything to do with his removal. Instead, the Board found that these communications reflected a "broad and continuing frustration with [Mr. Warren's] failure to respond to repeated requests for medical documentation regarding the nature of his condition."

Above all, the Board found that Mr. Warren's prior appeal to the Board was the protected activity, not his light duty status. However, Mr. Warren offers no evidence that the actions of the Postal Service in removing him could have been or were in fact retaliation for his prior appeal to the Board. As a result, the Board found Mr. Warren failed to establish the affirmative defense of retaliation. We find that the Board had substantial evidence to support this finding.

For these reasons, the decision of the Board is affirmed.